## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ALVOID KENNON,**

      **Petitioner,**

**v.**                                                                   **Case No. 8:19-cv-3150-MSS-CPT**
                                                                         **Case No.: 8:16-cr-532-MSS-CPT**

**UNITED STATES OF AMERICA,**

      **Respondent.**
_____/

## ORDER

This cause comes before the Court on Petitioner Alvoid Kennon's *pro se* Amended Motion under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence.  (Civ. Doc. 12) The United States responded in opposition, and Kennon replied.  (Civ. Docs. 14 and 15) For the reasons stated herein, Kennon is not entitled to relief.

### I.     Background

Following a three-day trial, a jury convicted Kennon of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Kennon was sentenced to 180 months' imprisonment.

Represented by new counsel, Kennon appealed.  Kennon challenged his conviction on sufficiency-of-the-evidence grounds.  The appellate court rejected that challenge and affirmed Kennon's conviction.  *United States v. Kennon*, 762 F. App'x 647 (11th Cir. 2019). The appellate court set forth the facts and history of this case as follows:

> On the morning of April 13, 2016, police officers were preparing to execute a search warrant for a home on West 3rd Street in Bradenton, Florida.  Detective Carl Jones was stationed in an unmarked vehicle about one block away from the residence.  He observed a green Ford

Expedition drive up to the residence and park in front of it. He then saw Mr. Kennon exit from the driver's side of the Expedition. Detective Jones did not see anybody else in the Expedition, or anybody else exit the Expedition. He radioed the search-warrant team about having seen Mr. Kennon, who had an outstanding warrant for a failure to appear at a prior court date.

Two additional detectives, Detective Ben Pieper and Detective Andres Perez, arrived within minutes, also in an unmarked vehicle. Shortly thereafter, they exited their vehicle and yelled, "Stop, police." Mr. Kennon ran. After a brief pursuit, Detective Perez caught up with Mr. Kennon, and took him into custody.

When the search-warrant team arrived at the residence, two detectives searched the Expedition. Through the window, they saw a pistol in plain view. They secured the pistol, and found several rounds of ammunition within it. Inside the car, the officers also found title for a different vehicle that had previously been registered to Mr. Kennon, as well as a Florida photo identification card and gym membership card, both belonging to Mr. Kennon.

In December of 2016, a federal grand jury charged Mr. Kennon, in a one-count indictment, with being a felon in possession of a firearm and ammunition. The case proceeded to a jury trial. At trial, the government presented testimony from, among others, Special Agent Walton Lanier of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). Agent Lanier testified that he had examined the pistol found in the green Expedition and determined that it was a Glock manufactured in Austria. He similarly testified that the ammunition found inside the pistol [had] been manufactured in Arkansas and the Czech Republic.

Mr. Kennon presented three witnesses, including his mother, who testified that she was the registered owner of the Expedition. She further stated that several days before Mr. Kennon was arrested, she had given the keys to the Expedition to Frederick Jefferson, the sole occupant of the West 3rd Street residence, so that Mr. Jefferson could perform maintenance on the vehicle. She also testified that Mr. Jefferson frequently carried a gun and that the gun found in the Expedition was a favorite of his.

Mr. Kennon moved for a judgment of acquittal under Fed. R. Crim. P. 29, arguing, among other things, that the evidence was insufficient to prove that he knowingly possessed the firearm and ammunition. The district court denied Mr. Kennon's motion, and the jury found him guilty.

*Kennon*, 762 F. App'x at 649 (footnote omitted).

## II.    Discussion

Kennon now moves to vacate his conviction and sentence, arguing that trial counsel was ineffective: (1) for not objecting and moving for a mistrial after a violation of a pretrial order limiting evidence about the nature of the search warrant; (2) for not moving for a judgment of acquittal based on insufficient evidence that Kennon knowingly actually or constructively possessed the firearm and ammunition; (3) for not objecting to the admission of the firearm and ammunition, Exhibits 4 and 5, respectively; (4) for questioning Kennon's mother, Chauncy Kennon Julien, about the wrong green Ford Expedition; and (5) for not investigating certain facts, or pursuing possible theories of defense.  Also, Kennon claims that appellate counsel was ineffective for not raising on direct appeal the issue of trial counsel's ineffectiveness.

To succeed on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When evaluating performance, the district court must apply a "strong presumption" that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Ci. 1995) (*en banc*) (citations omitted).

To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take."  *Chandler v. United States*, 218 F.3d

1305, 1315 (11th Cir. 2000). "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citations omitted). Indeed, "it does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Waters*, 46 F.3d at 1522.

A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 2004).

## A.    Ground One

Kennon claims that trial counsel was ineffective for not objecting and moving for a mistrial after a violation of a pretrial order limiting evidence about the nature of the search warrant. In granting Kennon's pretrial amended motion in limine, the district court ruled that "[t]he Government shall be permitted to offer the fact that the officers were conducting an investigation (without disclosure of its underlying nature) in the general area of the Defendant's arrest (without disclosure that a search warrant was being executed at the particular residence located at 1106 3rd Street West)." (Crim. Doc. 67 at 2)

Detective Carl Jones was the first witness to testify. (Crim. Doc. 148 at 113) After several background questions, the United States asked, "Can you explain to the jury what

your duties were at that area or on – in that area on that day?" (*Id.*) Detective Jones replied, "My dut[y] on that day was for surveillance of the target residence where a narcotic search warrant was being executed." (*Id.*) The United States continued the direct examination, and defense counsel asserted no objection. (*Id.* at 113–15)

After several more questions, the district court called counsel to sidebar, and the following exchange occurred (*Id.* at 116–17):

> THE COURT:   There was a motion in limine filed that allowed the Government to offer evidence that there was surveillance going on and that they were there to execute a search warrant.
>
> [AUSA]:   Correct.
>
> THE COURT:   But that they were not going to delve into the underlying nature of the investigation.
>
> [AUSA]:   That's correct.
>
> THE COURT:   And he just testified that he was there to execute a search warrant in connection with a narcotics investigation in his testimony, and I'm not sure how he wasn't told—
>
> [AUSA]:   He was told not to mention that.  He was told not to mention that, that they weren't going to say what type of search warrant it was.  I told them all that.
>
> THE COURT:   And no objection was drawn, but it's clearly a violation of the order, and so what do you want me to do about it?
>
> [DEFENSE COUNSEL]: Your Honor, I'm planning—obviously I don't want there to be a lot of testimony about any drug activity by these players, but one of the things I'm going to get into later is how the officers who searched the house had the authority to look in very tiny containers and they omitted to look in a lot of containers that would have corroborated my client's theory of the case, so . . . we'll just accept that a warning can be repeated to the witnesses and maybe there's something we can do to remind him and we'll go from there, but I—I don't want to open the door to a wholesale discussion of that kind of thing.

The district court instructed Detective Jones not to "mention the fact that this was a narcotics investigation any further in [his] testimony." (*Id.* at 117–18) Detective Jones continued his

testimony without further mention of the narcotics investigation.  The district court similarly instructed the remaining witnesses not to mention the underlying nature of the search warrant (*id.* at 163–64), and they complied with that instruction.

"The failure to make every valid objection or pursue every motion that has merit will not necessarily take counsel's performance 'outside the wide range of professionally competent assistance,' which is the scope of permissible performance." *Brewster v. Hetzel*, 913 F.3d 1042, 1057 (11th Cir. 2019) (quoting *Strickland*, 466 U.S. at 690).  "[C]ounsel can for reasonable strategic reasons refrain from making a valid objection or moving for relief their client is entitled to if there are reasonable strategic reasons for not objecting or moving." *Id.* "'And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.'"  *Id.* at 1056 (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*)).

At trial, counsel explained that testimony about the search warrant would corroborate Kennon's theory of the case. Counsel intended to show that "the officers who searched the house had the authority to look in very tiny containers and they omitted to look in a lot of containers." (Crim. Doc. 148 at 117)  This testimony would bolster the defense theory that "the officers did not do a thorough or genuine search because they had already achieved their goal of locking up Alvoid Kennon." (Civ. Doc. 14-1 at 4, Aff. of Warren Zimmerman)  In his affidavit, counsel elaborates the theory, explaining, "Detective Bordin's inclusion of the firearm on the return of the warrant for the search of the Jefferson house could thus be used to cast doubt on whether the driver of the vehicle was Mr. Kennon, as the government alleged, or instead the man who had answered the officers' knock on the door of the house, namely,

Mr. Jefferson." (Civ. Doc. 14-1 at 4)  Thus, counsel has articulated a "reasonable strategic reason[] for not objecting or moving [for a mistrial,]" after the detective testified that he was executing a narcotics search warrant.  *See Brewster*, 913 F.3d at 1057.  Kennon has not shown that "no competent counsel would have taken the action that his counsel did take."  *See id.* at 1056 (quotations omitted).

In reviewing whether Kennon was prejudiced by counsel's performance, the district court "ask[s] whether there is a reasonable probability of a different result if counsel had objected or moved for a mistrial."  *Id.* at 1052.  "It doesn't matter for prejudice purposes whether the judge at this defendant's trial would have sustained an objection; what counts is whether the judge would have been required to do so under the applicable law, and if so, whether doing so would have resulted in a reasonable probability of a different result."  *Id.*

Kennon acknowledges that "it is difficult to measure the affect [the violation] had on the jury's decision[,]" but contends that the violation "caused irreparable harm and likely influenced the jury's deliberation."  (Civ. Doc. 12 at 9)  This conclusory, unsupported contention is insufficient to establish that the district court would have been required to sustain an objection or motion for mistrial based on a single violation of the pretrial order. As a result, Kennon fails to show that such an objection or motion "would have resulted in a reasonable probability of a different result."  *Brewster*, 913 F.3d at 1052.

## B.    Ground Two

Kennon claims that trial counsel was ineffective for not moving for judgment of acquittal based on insufficient evidence that he knowingly actually or constructively possessed the firearm and ammunition.  To support this claim, Kennon emphasizes that (1) "the officers admitted they never saw Mr. Kennon touch the gun," (2) "[Kennon's] casual walking away

from the Ford Expedition, after it was parked, created a reasonable inference that he was unaware of [the gun's or ammunition's] presence[,]" (3) "[t]he gun was found among items belonging to [Mr. Jefferson], in the front passenger seat of a Ford Expedition . . . belonging to [Kennon's mother,]" (4) "[t]here was no evidence Mr. Kennon had ever used the vehicle before or had ever been seen riding in it previously[,]" (5) and "[Kennon's mother] testified that she had known Mr. Jefferson all her life, that Mr. Jefferson worked on her vehicles, and that the gun and other items found in the Expedition that day were typical favorites of Mr. Jefferson's[.]"  (Civ. Doc. 12 at 10–16)  Kennon argues that if trial counsel had moved for a judgment of acquittal citing these (and other related) facts, there is a reasonable probability the outcome of the trial would have been different.

Kennon's claim is barred by prior resolution.  Ordinarily, "[o]nce a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255."  *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal."); *see also Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) ("It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that we rejected in his direct appeal."); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994) ("[P]rior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding."); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981) ("This Court is not required on § 2255 motions to reconsider claims of error raised and disposed of on direct appeal.").

On appeal, Kennon argued there was insufficient evidence to establish his knowing possession of the firearm and ammunition. The appellate court rejected that argument, finding:

> [T]here was sufficient circumstantial evidence indicating that Mr. Kennon constructively possessed the pistol and ammunition. Mr. Kennon exited the Expedition from the driver's side, and shortly afterwards detectives saw a pistol in plain view on the passenger seat. There were no other passengers in the Expedition when Mr. Kennon drove and parked it in front of the target house. And two cards in Mr. Kennon's name, including his Florida identification card, were found inside the vehicle along with the firearm.
>
> Viewing this evidence in the light most favorable to the government, a reasonable fact-finder could have found that Mr. Kennon had driven the Expedition with the pistol in the passenger seat. Based on this, it could also reasonably have found that Mr. Kennon had knowledge and control of the pistol and ammunition. *See United States v. Howard*, 742 F.3d 1334, 1341–42 (11th Cir. 2014) (finding evidence sufficient to show constructive possession where officers found firearm in glove compartment and defendant had been in driver's seat shortly before the search); *United States v. Gates*, 967 F.2d 497, 499 (11th Cir. 1992) (defendant who was passenger in vehicle with two firearms found under the driver's seat "had sufficient access to the firearms to establish possession").

*Kennon*, 772 F. App'x at 650.

Kennon is attempting to relitigate an issue that the appellate court already resolved against him. Although Kennon articulates this sufficiency-of-the-evidence claim in terms of ineffective assistance of counsel, the claim is substantively the same as the argument considered and rejected on appeal—that insufficient evidence existed to establish his knowing possession of the firearm and ammunition. The claim therefore is barred by prior resolution, and the district court need not consider it.

Alternatively, even if the claim was not barred by prior resolution, it lacks merit. Kennon's claim misrepresents the record. Counsel unsuccessfully moved for judgment of acquittal on four grounds, including that insufficient evidence existed to establish Kennon's

knowing possession of ammunition. [1] (Crim. Doc. 149 at 155–56) The district court rejected that argument, ruling "there is sufficient evidence from which the jury could reasonably infer that if the defendant possessed the weapon, he knowingly possessed a loaded weapon." (Crim. Doc. 150 at 22)  "The mere fact that counsel was unsuccessful in making certain arguments, does not, without more, direct a finding that counsel's performance was constitutionally deficient." *United States v. Walker*, No. 3:08-cr-87, 2015 WL 4389939, at *8 (N.D. Fla. July 15, 2015); *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) ("The fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel"). Furthermore, Kennon cannot demonstrate that he was prejudiced by trial counsel's performance because the appellate court already found "that there was sufficient circumstantial evidence indicating that Mr. Kennon constructively possessed the pistol and ammunition." *Kennon*, 762 F. App'x at 650.

### D.     Ground Three

Kennon claims that counsel was ineffective for not objecting to the admission of the firearm and ammunition (Exhibits 4 and 5, respectively) when the United States failed to establish a proper chain of custody for those exhibits.  Kennon points to discrepancies in the testimony of Detectives Williams, Bordin, and Bembry, which, he argues, prove that the firearm and ammunition were left unattended inside of a vehicle at the police department for an unknown amount of time.  Kennon emphasizes that counsel failed to assert a chain-of-custody objection even after the district court identified the issue.[2]

---

[1] Counsel also argued (1) that there was conflicting testimony concerning the chain of custody of the firearm; (2) that the evidence showed a gap in time during which the vehicle was not monitored; and (3) that there was an insufficient connection to interstate commerce.  (Crim. Doc. 149 at 155–56)

[2] The district court asked Detective Bembry, "Who stood over the vehicle after you were relieved from that responsibility by Bordin?"  Detective Bembry responded that he did not know.  (Crim. Doc. 149 at 68–69)

Kennon cannot demonstrate he was prejudiced by counsel's failure to assert a chain-of-custody objection to the admission of the firearm and ammunition because such objection would not have resulted in the exclusion of those exhibits.  Instead, "gaps in the chain of custody bear only on the weight of the evidence, not its admissibility."  *United States v. Hughes*, 840 F.3d 1368, 1383 (11th Cir. 2016); *United States v. Lopez*, 758 F.2d 1517, 1521 (11th Cir. 1985) ("Challenge to the chain of custody goes to the weight rather than the admissibility of the evidence."); *see also Muoio v. United States*, No. 19-11784-E, 2019 U.S. App. LEXIS 32334, at *6 (11th Cir. Oct. 28, 2019) (finding that the petitioner "[could not] demonstrate prejudice from a failure to object to the admission of [an exhibit] on [chain-of-custody] grounds since a challenge to the chain of custody goes to the weight rather than the admissibility of the evidence and [the appellate court] ha[d] already found that there was sufficient evidence to sustain [the petitioner's] convictions") (citations omitted).

Furthermore, the record shows that counsel attempted to cast doubt on the chain of custody of these exhibits in order to attack the weight of the evidence.  Counsel cross-examined Detective Bembry and Officer Williams about the chain of custody.  (Crim. Doc. 149 at 63 and 131–34)  And, in his motion for a judgment of acquittal and closing argument, counsel highlighted gaps in the chain of custody.  (Crim. Doc. 149 at 154 and Crim. Doc. 150 at 63–64, 70–71)  Counsel's unsuccessful attempt to cast doubt on the authenticity of the firearm and ammunition does not constitute deficient performance.  *See Ward*, 592 F.3d at 1164.

### E.     Ground Four

Kennon claims that counsel was ineffective for questioning his mother, Chauncy Kennon Julien, about "the wrong [green Ford Expedition] that the firearm was obtained from."  He argues that counsel's questioning confused his mother and "damaged [her] credibility . . . greatly giving the prosecution the ability to decide whether to purge [her] testimony."  (Civ. Doc. 12 at 31)

During his investigation, counsel discovered that Ms. Julien owned two similar green Ford Expeditions, when she brought the wrong Expedition to their pretrial inspection of the vehicle.  (Civ. Doc. 14-1 at 9–14)  At trial, counsel elicited testimony from Ms. Julien about the two green Ford Expeditions (Crim. Doc. 149 at 193–94):

> [DEFENSE COUNSEL]: Ma'am, do you recall an occasion on which I, as Alvoid's attorney, and an investigator came to Bradenton for various purposes, including the purpose of looking at the vehicle that had allegedly been involved in the crime for which Alvoid was arrested?
> …
>
> WITNESS:            Yes.
> . . .
>
> THE COURT:         The question is do you have more than one Ford Expedition.
>
> THE WITNESS:       Yes, ma'am.
>
> THE COURT:         And do you know whether the Ford Expedition you brought to the meeting is the same one that was picked up at the house on or after the date of the arrest?
>
> THE WITNESS:       I'm trying to see the difference.  Both of them are green.

Ms. Julien was unable to remember which one of her Ford Expeditions was involved in Kennon's arrest.  (*Id.* at 194–95)  Counsel asked a few more questions about how Ms. Julien reclaimed the vehicle following Kennon's arrest.  (*Id.* at 195–96)

In his responsive affidavit, counsel explains that he questioned Ms. Julien about the two vehicles, anticipating that the United States might elicit testimony about them.  (Civ. Doc. 14-1 at 14)  Counsel explains, "[Ms. Julien] obviously had brought the wrong car to the [pretrial] investigation, the government was well aware, and the jury would undoubtedly find out."  (*Id*.)  Counsel elaborates that he "hope[d] . . . that the jury would still accept the explanation that the car and thus the gun were in Mr. Jefferson's possession at relevant times."  (*Id*.)

Kennon fails to show that "no competent counsel would have taken the action that his counsel did take."  *Chandler*, 218 F.3d at 1315.  Counsel only briefly questioned Ms. Julien about the two vehicles, and Kennon's assertion that this confused her and damaged her credibility is speculative.  Furthermore, counsel offers a reasonable strategy for dealing with the two similar vehicles by eliciting this testimony.  *See Walls v. Buss*, 658 F.3d 1274, 1279 (11th Cir. 2011) ("[W]e have recognized that it can be reasonable to let incriminating evidence come to the jury's attention."); *see also Harrington v. Richter*, 562 U.S. 86, 109 (2011) ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect.") (quotations omitted); *Strickland*, 466 U.S. at 690 (explaining that strategic choices between plausible options are virtually unchallengeable); *Chandler*, 218 F.3d at 1314 ("[A] court must not second-guess counsel's strategy.").

### F.    Ground Five

Kennon claims that counsel was ineffective for not investigating certain facts, or pursuing possible theories of defense, including: (1) that there was no driveway at 1106 3rd Street, despite Detective Jones's testimony to the contrary; (2) that there was tree cover and a

vehicle parked in the driveway, which would have inhibited Detective Jones's ability to observe Kennon exiting the Expedition; (3) that "Detective Bordin left the information about the vehicle and where the track keys [were] located and whether the vehicle was locked or not[,] [w]hich in hand would have supported [that] the evidence was insufficient to prove [Kennon] knowingly possessed the firearm[;]" and (4) that Kennon lacked knowledge of the ammunition. (Civ. Doc. 12 at 32–33)

"It is well established that counsel's obligation to render competent performance includes 'a duty to make reasonable investigations' of potential mitigating evidence 'or to make a reasonable decision that makes particular investigations unnecessary.'" *Raheem v. GDCP Warden*, 995 F.3d 895, 909 (11th Cir. 2021) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2009)). "[A]n attorney's 'decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Wiggins*, 539 U.S. at 521–22). "But counsel's duty to investigate 'does not necessarily require counsel to investigate every evidentiary lead.'" *Id.* (quoting *Williams v. Allen*, 542 F.3d 1326, 1337 (11th Cir. 2008)); *see also Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002) (citation omitted) ("The decision whether to present a line of defense, or even to investigate it, 'is a matter of strategy and is not ineffective unless the petitioner can prove that the chosen course, in itself, was unreasonable."). Kennon's claims about the facts and theories that counsel should have pursued are insufficient to support relief on this record.

Finally, Kennon claims counsel rendered ineffective assistance when he unsuccessfully moved for a judgment of acquittal. In that motion, counsel argued, in part, that there was insufficient evidence of Kennon's knowing possession of the ammunition. (Crim. Doc. 149

14

at 156)  Again, the mere fact that counsel was unsuccessful in making this argument does not show his performance was constitutionally deficient.  *See Ward*, 592 U.S. at 1164.

### G.    Appellate Counsel

Kennon appears to assert another ground for relief concerning appellate counsel's performance.  He does not identify ineffective assistance of appellate counsel as a separate, numbered ground for relief in his Section 2255 motion, and the United States does not address this claim in its responsive memorandum.  However, throughout his motion, Kennon repeatedly claims that appellate counsel was ineffective for not raising on direct appeal the issue of trial counsel's ineffectiveness.  (Civ. Doc. 12 at 5, 17, 18, 29, 30, 33)

The district court must construe Kennon's filings more liberally than if they were filed by counsel, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), and must resolve all claims properly presented in a Section 2255 motion before granting or denying relief.  *Long v. United States*, 626 F.3d 1167, 1169 (11th Cir. 2010) (explaining that under *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (*en banc*), "any and all cognizable claims" should be included when conducting a merits review).  Construing Kennon's motion liberally, the district court assumes Kennon's claim of ineffective assistance of appellate counsel was properly presented in his amended motion to vacate and proceeds to evaluate its merits.  *See Heffield v. United States*, 760 F. App'x 834, 835 (11th Cir. 2019) (remanding for the district court to consider a claim that was "discussed . . . several times" in a Section 2255 motion, even though the claim was "not present[ed] . . . as a separate argument section or under a distinct heading in [the] § 2255 motion").

*Strickland* governs an ineffective assistance of appellate counsel claim.  *Dell v. United States*, 710 F.3d 1267, 1273 (11th Cir. 2013).  Proof that appellate counsel omitted an issue on

15

appeal is not proof of deficient performance "provided that counsel uses professional judgment in deciding not to raise [that] issue[]." *Eagle v. Linahan*, 279 F.3d 926, 940 (11th Cir. 2001). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." *Strickland*, 466 U.S. at 689. "[The] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Without any explanation or detail, Kennon claims that a conflict of interest existed because trial and appellate counsel served as co-counsel before and during the trial. However, in their responsive affidavits, trial and appellate counsel both deny serving as co-counsel in Kennon's case and deny the existence of a conflict of interest. (Civ. Doc. 14-1 at 15–18 and Civ. Doc. 15 at 8–13) Trial counsel states that "[w]ith permission from Mr. Kennon, [he] consulted with [appellate counsel] from time to time to test the reasonableness of [his] thinking about the case." (Civ. Doc. 14-1 at 17) Appellate counsel recalls an occasion when "[trial counsel] asked [her] opinion about some pre-trial-related procedure or issue" as well as a telephone call with trial counsel about Kennon's case. (Civ. Doc. 15 at 10) Also, appellate counsel believes "there was a brief period of time [when] [trial counsel's] and [her] representation of Mr. Kennon after his conviction technically overlapped and [her]

16

recollection is that this was because there were certain duties . . . that [trial counsel] needed to attend to before he could withdraw." (Civ. Doc. 15 at 10)

The record confirms that trial and appellate counsel did not serve as co-counsel before or during Kennon's trial. Rather, appellate counsel was substituted for trial counsel only *after* entry of judgment. (Crim. Docs. 142 and 146) Trial counsel was appointed on March 3, 2017, and represented Kennon through trial and entry of judgment on January 30, 2018. (Crim. Docs. 24, 25, and 138) Three days after judgment was entered, on February 2, 2018, trial counsel filed a notice of appeal on Kennon's behalf. (Crim. Doc. 141) Also on that date, trial counsel filed a consent motion to substitute appellate counsel in his place. (Crim. Doc. 142) Fourteen days later, on February 16, 2018, the magistrate judge granted that motion and relieved trial counsel of further responsibility in the case, and trial counsel was terminated from the docket sheet. (Crim. Doc. 146) Appellate counsel did not appear in the case until the filing of the consent motion to substitute counsel.

Kennon's claim that trial and appellate counsel served as co-counsel before and during the trial is belied by the record. At most, the record shows that trial counsel occasionally conferred with appellate counsel about the case and that there was a brief period of time— *after* the trial concluded and *after* judgment was entered—when the consent motion to substitute counsel remained pending. Kennon does not explain how this created a conflict of interest or prejudiced him on appeal. Kennon's assertions are pure speculation, and they are insufficient to demonstrate prejudice. *See Brownlee v. Haley*, 306 F.3d 1053, 1060 (11th Cir. 2002) ("[S]peculation is insufficient to carry the burden of a habeas corpus petitioner [.]").

Appellate counsel explains that the issue of trial counsel's alleged ineffectiveness was not raised on direct appeal not because of a conflict of interest, but because the record was

not adequately developed.  (Civ. Doc. 15 at 8)  She identified several grounds on which to form an ineffective assistance claim.  But, "on the very limited, cold record available upon which to assess [trial counsel's] tactical decisions[,]" she determined—and Kennon agreed—that a "motion under 28 U.S.C. § 2255 with [trial counsel's] assistance in completing the record was more likely to be successful."  (*Id.* at 12)

Appellate counsel has articulated a valid, tactical reason for not pursuing an ineffective assistance claim on direct appeal.  "[I]neffective-assistance claims ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial."  *Massaro v. United States*, 538 U.S. 500, 505 (2003).  This is because "[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose."  *Id.*  "[The appellate court] will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record."  *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) (quoting *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) (declining to consider on direct appeal an ineffective assistance claim because the record was insufficiently developed).  "The preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion 'even if the record contains some indication of deficiencies in counsel's performance.'"  *Id.* (quoting *Massaro*, 538 U.S. at 504).

Furthermore, Kennon has not shown that trial counsel was ineffective, so appellate counsel's failure to raise this meritless issue cannot constitute ineffective assistance. *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise

non-meritorious issues does not constitute ineffective assistance.").   Kennon has not overcome the presumption of effective assistance of appellate counsel because he has not shown that the issue of trial counsel's alleged ineffectiveness is clearly stronger than the sufficiency-of-the-evidence issue appellate counsel raised.   *See Cartman v. United States*, No. 18-11520-J, 2019 U.S. App. LEXIS 11272, at *3 (11th Cir. Apr. 17, 2019) (declining to issue a certificate of appealability because the petitioner failed to show appellate counsel performed deficiently by not raising ineffective assistance claims).

## H.   Kennon's Reply

Relying on appellate counsel's affidavit, Kennon attempts to raise several new grounds for relief in his reply.   Some of these new grounds are the same as the issues that appellate counsel identified as possible grounds for a Section 2255 motion.   Kennon claims: (1) that there was no probable cause to arrest him and trial counsel was ineffective for not raising this issue; (2) that the cumulative effect of trial counsel's errors amounted to a violation of his constitutional rights; (3) that trial counsel was ineffective in preparing an "ad hoc proffer agreement," (4) that trial counsel was ineffective for not introducing exculpating video evidence; (5) that trial counsel's performance at trial was ineffective because he was sleep deprived and on medication; (6) that his right to a speedy trial was violated; (7) that trial counsel was ineffective for not objecting to a defective indictment; and (8) that his due process rights were violated when *Brady* and *Giglio* materials were withheld from him.

When a Section 2255 petitioner does not raise a claim until the reply brief, the claim is "not properly before the district court." *Wilson v. United States*, No. 16-15133, 2017 U.S. App. LEXIS 14164, at *2 (11th Cir. Feb. 23, 2017) (citing *Herring v. Secy, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)); *see Prada v. United States*, 692 F. App'x 572 (11th Cir. 2017)

(affirming the district court's refusal to consider new arguments raised in a reply brief because petitioner "was barred from raising new claims"). This holds true even when the petitioner is proceeding *pro se*. *Enriques v. United States*, 416 F. App'x 849, 850 (11th Cir. 2011) ("Although *pro se* pleadings are construed more liberally than those filed by counsel, . . . issues not argued by a *pro se* litigant in his initial brief are deemed waived."); *see also Oliveiri v. United States*, 717 F. App'x 966, 967 (11th Cir. 2018); *Snyder v. United States*, 263 F. App'x 778, 780 (11th Cir. 2008); *United States v. Evans*, 473 F.3d 1115, 1120 (11th Cir. 2006).

Kennon failed to include these new claims in his Amended Motion to Vacate, and instead, raised them for the first time in his reply.[3] Consequently, these new claims are not properly before the district court, and the court declines to consider them.

Additionally, the court declines to construe Kennon's reply as a motion to amend or add claims to his Amended Motion to Vacate. The district court already permitted Kennon an opportunity to amend his initial Section 2255 motion because the initial motion was rambling in nature, difficult to interpret, and not on the required form. Kennon was cautioned that his amended motion would supersede the original motion, must contain all claims for relief, must not incorporate or refer back to the initial motion, and must specifically identify each claim for relief and the facts that support each claim. (Civ. Doc. 7) Therefore, Kennon waived these new claims by failing to include them in his amended motion to vacate.

## III.    Need for Evidentiary Hearing

A district court deciding a Section 2255 motion may "order . . . its summary dismissal '[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior

---

[3] Appellate counsel's affidavit, in which several of these issues are identified, was filed for the first time with Kennon's reply.

proceedings in the case that the movant is not entitled to relief[.]'" *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003) (quoting 28 U.S.C. § 2255).   No hearing is required when the record establishes that a Section 2255 claim lacks merit, *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984), or that it is defaulted, *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).   Kennon has not established the need for an evidentiary hearing.  *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) (*en banc*).

## IV.    Conclusion

Accordingly, Kennon's *pro se* Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 12) is **DENIED**.  The **CLERK** is directed to enter a judgment against Kennon, to **CLOSE** this case, and to enter a copy of this order in the criminal action.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Kennon is not entitled to a certificate of appealability ("COA").   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a COA.   Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."   To merit a certificate of appealability, Kennon must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).   Kennon has not shown that reasonable jurists would debate either the merits of the claims or the procedural issues.   Accordingly, a certificate of appealability is **DENIED**.   Leave to appeal *in forma*

*pauperis* is **DENIED**.  Kennon must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** in Chambers in Tampa, Florida, this 8th day of December, 2021.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE